**T. O. METCALF CO., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**and**

Lithographers and Photoengravers International Union, Local 3–L, AFL–CIO, Intervenor.

**INTERNATIONAL PRINTING PRESSMEN AND ASSISTANTS' UNION OF NORTH AMERICA, LOCALS 18 AND 19, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**and**

Lithographers and Photoengravers International Union, Local 3–L, AFL–CIO, Intervenor.

**Nos. 7170, 7172.**

United States Court of Appeals First Circuit.

Jan. 13, 1969.

Quentin O. Young, Boston, Mass., with whom Warren D. Oliver and Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., were on brief, for petitioner T. O. Metcalf Co.

John S. McLellan, Kingsport, Tenn., with whom D. Bruce Shine, Kingsport, Tenn., was on brief, for petitioner International Printing Pressman, etc.

Leon M. Kestenbaum, Washington, D. C., Attorney, with whom Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Warren M. Davison, Washington, D. C., Attorney, were on the brief, for respondent.

Eugene Cotton, Chicago, Ill., with whom Cotton, Watt, Jones & King, Chicago, Ill., was on brief, for Lithographers and Photoengravers International Union, Local 3–L, AFL–CIO, intervenor.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Petitioners, T. O. Metcalf Co. (Metcalf) and International Printing Pressmen and Assistant's Union of North America, Locals 18 and 67, AFL–CIO (Pressmen) seek to review a section 8(a) (5) and (1) order of the National Labor Relations Board for refusing to bargain with the Amalgamated Lithographers and Photoengravers' International Union, Local 3–L, AFL–CIO (Lithographers) with relation to employee Balboni and others, and a section 8(a) (3) and (1) order for discharging Balboni for failure to pay dues to Pressmen. 171 N.L.R.B. 160 (1968). The sole question that we need consider is whether Balboni properly belongs in a unit represented by Pressmen or in the unit represented by Lithographers.

In 1962 Williamson Offset Company (Williamson) was merged into and became a part of Metcalf. The two corporations, which had long had common ownership, were located on the seventh and eighth floors, respectively, of the same building. Williamson, which had eight lithographic employees, did the preparatory work and operated three large offset presses. Metcalf did essentially a printing press business, but in 1961 had acquired three smaller offset presses, for which it used Williamson's plate-making facilities. The two companies had a common clerical staff—not here involved—which was located on the seventh floor. There had been no interchange of lithographic employees.

Prior to the merger Metcalf's three lithographic employees, together with its other pressroom employees, were represented by Pressmen, which had a union shop agreement. Williamson's lithographers were represented by Lithographers. It did not have a union security clause. At the time of the merger the Lithographers' 1960 contract had run out. After the merger Lithographers petitioned for an election at Metcalf in a unit described as "all lithographic production employees." See 139 N.L.R.B. 838 (1962). At the hearing, however,

Lithographers' counsel disclaimed interest in the lithographers who had previously been employed by Metcalf, stating that historically it had always represented only Williamson employees and "they continued to run on different floors and so on * * *."

At the hearing Metcalf and Pressmen took a number of positions, but the one to which the Board gave special attention was Metcalf's claim that all lithographers should be in a single unit. The Board rejected this position, entirely on history. It concluded that "the following employees of the Employer at its Boston, Massachusetts plant, constituted a unit * * *.

"All lithographic production employees formerly employed by Williamson * * *." Lithographers won the ensuing election 8—0.

After the merger the number of lithograph presses on the eighth floor was increased. While there had previously been no interchange of employees, thereafter there was such. All lithographer apprentices were trained on the seventh floor, and temporary assignments were made to regular positions there. In 1963 a series of employees came to the seventh from the eighth floor to fill a permanent vacancy. The last of these was Balboni, who came down in 1965. Another eighth floor employee, Mehigan, moved down in 1966.

Because of its union shop agreement all such employees continued to pay dues to Pressmen. This was eventually discovered by Lithographers, who then demanded to bargain for Balboni and all other lithographers permanently assigned to the seventh floor. After considerable backing and filling the matter was brought to a head when Balboni stopped paying dues to Pressmen, and at that union's insistence was discharged by the company, which took the position that Pressmen acquired, or retained, all employees who had not been previously employed by Williamson. The Board, however, has now affirmed a trial examiner's decision that the unit represented by Lithographers was for all jobs on the seventh floor, and not simply the prior Williamson employees. The violations charged followed as a matter of course.

At the oral argument before us it was asserted that it would be manifestly absurd to establish a unit composed of a number of named individuals, which would shrink as these individuals departed, ultimately to disappear altogether. When the entire circumstances are looked at we do not think it all that absurd. It is to be borne in mind that when in 1962 Williamson was absorbed into the continuing corporation, Metcalf wanted Lithographers to take over the lithographers that Metcalf already had, but Lithographers refused—it wanted to continue its historical pattern. We could agree that it was reasonable for the Williamson employees to want to remain with their old union. But if they wanted to insist on history, alone and disclaim the Metcalf lithographers, then we do not find it absurd that history should run out with the employees who enlisted it and that, as new employees came on the scene, Metcalf should have an opportunity to create a single lithographers' unit. We believe that a statesmanlike decision by the Board could have catered originally to the old Williamson employees, but have recognized their demand for what it was. Two lithographic units, one with eight men and one with three, doing the same work for the same employer on adjoining floors for different pay and other conditions (as it appears), absent some special justification is itself something less than desirable. Consequently, we approach the question of interpretation of what in fact was provided for in 1962 without weighting the scales with a concept that the company's interpretation is, presumptively, to be avoided as absurd.

Returning to the specifics of the 1962 proceeding, Lithographers' oral amend-

ment of "all lithographic production employees" originally took this form:

"all employees of the Employer who were formerly employees of Williamson Offset Company, and/or who are presently employed on the seventh floor of the Company's plant."

Counsel for Pressmen inquired what was meant by the second clause. Following a discussion off the record there was substituted therefor, "and covered by a contract [with Lithographers] dated May 19, 1960." The company acquiesced.

In our opinion the amendment did nothing to clarify the situation. If anything, it accentuated the possibility that the description was in persona rather than addressed to jobs. The company now asks, inter alia, what would happen if it moved to a new building and all lithographers worked in a single area, with more presses—in which "unit" would a new employee belong?

 Petitioners, however, neglected to ask this question, or any like it before. While the company's present position, with which we might agree, is that the 1962 description of the unit was "ambiguous," no one said so at the time. We think the principle must be this. If an ambiguously described unit is set up, with no party complaining of the ambiguity but, rather, with everyone accepting it, all leave themselves open to a later clarification or interpretation by the Board, provided it is a reasonable one. While another interpretation might be better, we cannot say here that this one was unreasonable. Nor would we say that the Board could not make an interpretation in an unfair labor practice proceeding; it was not limited to a clarification proceeding under Rules and Regulations, section 102.61, 29 C.F.R.

The order of the Board will be enforced.